IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| JOHN DOE and JANE DOE, individually on behalf of all others similarly situated,<br>　　　　　　　Plaintiffs,<br><br>v.<br><br>MOSAIC HEALTH SYSTEM and HEARTLAND REGIONAL MEDICAL CENTER d/b/a MOSAIC LIFE CARE,<br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 23-06008-CV-SJ-JAM<br>)<br>)<br>)<br>)<br>) |

**ORDER**

Before the Court is Plaintiffs' Motion to Remand. (Doc. 17) Plaintiffs seek remand to Missouri state court asserting the matter was improperly removed under the theory of federal officer jurisdiction, 28 U.S.C. § 1442(a)(1). For the following reasons, Plaintiffs' motion is granted.

**I.　　BACKGROUND**

Plaintiffs, as Missouri citizens, initiated the instant putative class action petition in the Circuit Court of Buchanan County, Missouri, bringing Missouri state law claims against Defendants Mosaic Health System and Heartland Regional Medical Center ("Defendants"), both Missouri corporations that together form a network of hospitals. (Doc. 1-2) Plaintiffs claim that Defendants embedded automatic rerouting tools like the Meta Pixel on their websites to transmit protected health information to third parties such as Facebook, thereby exploiting information for advertising purposes, without the consent or knowledge of their patients. (Doc. 1-2 ¶¶ 3, 4, 7, 8, 20, 27, 28, 30) The Meta Pixel is a tracking pixel[1] that allows Facebook to record, use, and track

---

[1] A tracking pixel is a line of source code embedded into a website that commands the browser to record and forward information including IP addresses, cookies, and browser-fingerprints to third parties. (Doc. 1-2 ¶¶ 32, 35, 38)

patients' input data from Defendants' websites. Plaintiffs contend that Facebook then uses the information to target its advertising and provides Defendants, *inter alia*, with data, analytics, and marketing tools. (Doc. 1-2 ¶¶ 74-82)

Defendants timely removed the case to federal court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), contending that Plaintiffs' allegations are based on Defendants' participation at the directive of the federal government to digitize health information, including their participation in the Meaningful Use Program. (Doc. 1 ¶¶ 12-24, 39) Plaintiffs timely filed the instant Motion to Remand and Suggestions in Support on February 17, 2023. (Doc. 17) Defendants responded on March 17, 2023. (Doc. 24) Plaintiffs replied on March 30, 2023. (Doc. 25)

In 2009, Congress enacted the Health Information Technology for Economic and Clinical Health ("HITECH") Act to create a health information technology network across medical providers. HITECH Act, 42 U.S.C. § 300jj-18 (2009). The Centers for Medicare and Medicaid Services encourage eligible professionals, hospitals, and critical access hospitals to adopt and "meaningfully use" certified electronic health record technology, including electronic health records ("EHR") through regulations. *See generally* 42 C.F.R. § 495.2. Critical access hospitals are facilities that have been certified and receive Medicare payment for inpatient and outpatient services. 42 C.F.R. § 495.4. EHR include patient demographics, medical history, secure messaging, diagnostic information, and clinical provider support tools, accessible in an electronic format. 42 C.F.R. § 495.4 (incorporating 45 C.F.R. § 170.102).

Until 2022, the regulations awarded incentive payments to encourage eligible hospitals to adopt and meaningfully use EHR. Doc. 1, ¶ 18; *see also* 42 C.F.R. § 495.104. Healthcare providers satisfy the meaningful use standard by using EHR to achieve a certain combination of

2

objectives through specific measures. *See* 42 C.F.R. § 495.20–24.[2] After a transition period, failing to satisfy the meaningful use standard results in reduced Medicare payments. *See* 42 C.F.R. § 495.2; 42 C.F.R. § 495.104.

A National Coordinator guides the Meaningful Use Program.[3] 42 U.S.C. § 300jj-11(a). Every five years the National Coordinator publishes a Health Information Technology Plan. (Doc. 24-5, p. 42) The National Coordinator also maintains a non-binding "Playbook" to suggest ways private providers may satisfy the "meaningful use" standard. *See* Doc. 24-7, pp. 8–9;[4] *see also* 42 U.S.C. § 300jj-16 (limiting required standards and specifications to regulations).

## II. LEGAL STANDARD

Any civil or criminal action may be removed from state court when the action is brought against an "officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office … ." 28 U.S.C. § 1442(a)(1). This statute, known as the federal officer removal statute, is to be liberally construed. *Buljic v. Tyson Foods, Inc.,* 22 F.4th 730, 738 (8th Cir. 2021).

As the removing parties, Defendants bear the burden of proof by a preponderance of the evidence. *Turntine v. Peterson,* 959 F.3d 873, 881 (8th Cir. 2020). To properly trigger federal jurisdiction under 28 U.S.C. § 1442(a)(1), Defendants must establish that: (1) Defendants acted under the direction of a federal officer; (2) there is a causal connection between the alleged conduct at issue and the official authority; (3) Defendants have a colorable federal defense to Plaintiffs'

---

[2] For example, one goal is to increase participation and communication between health care teams and patients. 42 C.F.R. § 495.25(c)(6)(ii). This patient engagement objective is measured by the number of patients who interact with his/her health record. *Id.*

[3] The Meaningful Use Program is also known as the "Medicare Promoting Interoperability Program." *See Medicare Promoting Interoperability Program Frequently Asked Questions*, CMS.GOV, https://www.cms.gov/files/document/medicare-pi-program-faqs-2022-08-25.pdf (last visited July 19, 2023).

[4] Specific page references herein are to the page numbers assigned by the CM/ECF system to the electronically-filed document.

3

claims; and (4) Defendants are considered a "person" under the statute. *Buljic,* 22 F.4th at 738. It is undisputed that Defendants are private entities, and each are considered a "person" within the meaning of 28 U.S.C. § 1442(a)(1). *See* Doc. 17, pp. 7-8.

### III.  DISCUSSION

Federal officer removal is a long-standing principle. *See Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 147–51 (2007) (discussing the history of federal officer removal). Other healthcare institutions have removed cases under 28 U.S.C. § 1442(a)(1) based on participation in the Meaningful Use Program, and many such removals have resulted in remand.[5] Fewer, however, have remained in federal court.[6] Those limited instances are neither binding nor persuasive, and this Court proceeds to evaluate the instant claim on the merits. Defendants bear the burden to demonstrate they were "acting under" the direction of a federal officer; their conduct was related to that authority; and they have a colorable federal defense.

#### A. Acting Under the Direction

Although "acting under" the direction of a federal officer is a broad concept, it does not include every connection between a private entity and the federal government. *Jacks v. Meridian Resource Co., LLC,* 701 F.3d 1224, 1231 (8th Cir. 2012), *abrogated on other grounds by BP P.L.C. v. Mayor and City Council of Balt.*, 141 S. Ct. 1532, 1538 (2021). The private entity must be "authorized to act with or for federal officers or agents in affirmatively executing duties under federal law." *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 714 (8th Cir. 2023) (quoting *Watson*,

---

[5] *Progin v. UMass Mem'l Health Care, Inc.*, 2023 WL 4535129 (D. Mass. July 13, 2023) (remanded); *Doe v. Hoag Mem'l Presbyterian Hosp.*, 23-cv-00444, 2023 WL 3197716 (C.D. Cal. May 2, 2023) (remanded); *Crouch v. Saint Agnes Med. Ctr.*, 22-cv-01527, 2023 WL 3007408 (E.D. Cal. Apr. 19, 2023) (remanded); *Heard v. Torrance Mem'l Med. Ctr.,* 2023 WL 2475544 (C.D. Cal. Mar. 13, 2023) (remanded); *Quinto v. Regents of Univ. of Cal.*, 2023 WL 1448050 (N.D. Cal. Feb. 1, 2023) (remanded); *Doe v. Cape Cod Healthcare, Inc.,* 1:23-CV-10080-RGS (D. Mass. Jan. 25, 2023), Dkt. 10 (remanded); *Doe I v. BJC Health Sys.*, 2023 WL 369427 (E.D. Mo. Jan. 10, 2023) (remanded), *appeal filed*, 23-1107 (8th Cir. filed Jan. 19, 2023).
[6] *Doe v. ProMedica Health Sys*., *Inc.*, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020) (removal upheld); *Doe I v. UPMC*, 2020 WL 4381675 (W.D. Pa. July 31, 2020) (removal upheld).

4

551 U.S. at 151). The federal government must typically control, guide, or direct the private entity's conduct. *Watson*, 551 U.S. at 151. *See e.g., Buljic,* 22 F.4th at 730 (finding the federal government statements were encouraging but "contained no directive"); *Graves v. 3M Co.*, 17 F.4th 764 (8th Cir. 2021) (finding that 3M had not demonstrated the government had control over alleged conduct). Control may be demonstrated by showing an "unusually close" relationship between the private entity and the government that involves oversight and supervision. *Jacks*, 701 F.3d at 1232 (quoting *Watson*, 551 U.S. at 153). The private entity's conduct "must involve an effort to *assist*, or to help *carry out*, the duties of the superior officer." *Watson*, 551 U.S. at 152.

Simply assisting the government by following the law or regulations however is not "acting under" the directive of a federal officer for purposes of the federal officer removal statute. For example, taxpayers who complete tax forms or airline passengers who refrain from smoking on a plane are merely complying with the law, not carrying out a federal duty even though they may "help" or "assist" the federal government advance a directive. *Watson*, 551 U.S. at 152. Similarly, a privately regulated entity may not remove a case under 28 U.S.C. § 1442(a)(1) simply because "a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail." *Id*. at 145. Allowing private entities to trigger federal officer removal by merely complying with federal laws and regulations would impermissibly expand the scope of the statute. *Id*. at 153 ("Neither language, nor history, nor purpose led us to believe that Congress intended any such expansion.").

Defendants here are privately regulated entities monitored by the Centers for Medicare and Medicaid Services for compliance with the statutes and regulations related to the Meaningful Use Program. This alone is insufficient to establish that Defendants were acting under the directive of a federal officer. Nonetheless, Defendants argue their relationship with the government is akin to

5

that of a private government contractor.[7]  First, Defendants assert their actions constituted more than lawful compliance, as they were carried out under the directives of the National Coordinator. Second, Defendants argue their actions assisted the government to fulfill a basic task that the government would otherwise have had to perform.

1. Beyond Compliance

Defendants assert that their conduct went beyond lawful compliance and was under the directives of the National Coordinator, as demonstrated by express direction, payment, and participation in the Meaningful Use Program.

While Defendants argue they were "directed" to "create[] and optimize[] their website" by the National Coordinator through the Strategic Plan and Playbook, significantly, the National Coordinator does not have authority to control Defendants' adoption of specific measures outside the realm of regulations.  42 U.S.C. § 300jj-16; *see* Doc. 24-7, pp. 2, 4, 8.  Additionally, the Strategic Plan is not binding on private entities, and the Playbook is an evolving resource that encourages — but does not dictate — which actions must be adopted.  42 U.S.C. § 300jj-16; *see* Docs. 24-5, p. 42; 24-7, pp. 2, 4, 8.  Incorporating the National Coordinator's non-binding suggestions or advice does not establish that Defendants have "acted under" a federal directive. *Graves*, 17 F.4th at 770 ("Government advice and assistance, like the regulatory rules and

---

[7] In some instances, private government contractors may satisfy the acting under the directive of a federal officer element.  By entering a contract with the government, a private government contractor agrees to adhere to additional obligations in addition to its duty to follow the law.  The contractual relationship permits the government to control the private government contractor beyond laws and regulations.  When the private contractor acts pursuant to that contract, it is acting beyond lawful compliance.  Additionally, a private government contractor typically produces an item the government needs or carries out a task the government would otherwise have to perform independent from complying with the law.  *Watson*, 551 U.S. at 153–54; *see Jacks*, 701 F.3d at 1231–32 (recognizing *Watson* distinguishes private contractors from private entities for purposes of § 1442(a)(1)).  In doing so, the private government contractor is placing itself in the position of the government, and therefore, satisfies the longstanding principles of the federal officer removal statute.

requirements at issue in *Watson*, do not establish the 'acting under' relationship that § 1442(a)(1) requires.").

Comparing their situation to that in *Watson*, Defendants also argue they were acting under the National Coordinator's directives because the Government paid them for their assistance. (Doc. 24, pp. 8–9) In *Watson*, Phillip Morris removed a state action under the federal officer removal statute because the Federal Trade Commission supervised Phillip Morris' testing of cigarettes. The Supreme Court held removal was not proper because Phillip Morris complied with regulations, not a federal directive. *Watson,* 551 U.S. at 153–54. In its analysis, the Supreme Court noted a lack of "evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement." *Id.* Evidence of payments or incentives--now potential reductions--here however does not demonstrate a relationship beyond that of lawful compliance, and Defendants' payment argument fails.

Arguing their participation in a federal program shows the federal government directed their action, Defendants rely on three circuit court cases where removal was held to be proper because the removing parties participated in a federal program (the Rural Electrification Act or "REA"). *See Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190 (5th Cir. 2019); *Cessna v. Rea Ener. Coop., Inc.*, 753 F. App'x 124 (3d Cir. 2018); *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135 (11th Cir. 2017). Such reliance is unavailing. The REA is a depression-era program in which the federal government grants loans to private cooperatives to provide electricity to rural areas throughout the United States. *Caver*, 845 F.3d at 1138. The electric cooperatives in *Butler*, *Cessna*, and *Caver* successfully removed lawsuits from state court to federal court under the federal officer removal statute because, amongst other reasons and in addition to regulations, their conduct was controlled by the federal government through loan agreements. *Butler,* 926 F.3d at

201 ("The cooperatives are not merely regulated entities; rather, they are 'instrumentalities of the United States' that 'act under' [the federal officer]'s direction based on a close and detailed lending relationship and shared goal of furthering affordable rural electricity."); *Cessna*, 753 F. App'x at 127; *Caver*, 845 F.3d at 1143–44.

The contractual relationship between the federal government and the cooperatives, *inter alia*, established that the cooperatives acted on behalf of the federal government so as to properly invoke the federal officer removal statute. Like the cooperatives, Defendants participate in a federal program. Unlike the cooperatives, Defendants have not demonstrated the government required Defendants to act through a contract or lending agreement. The Meaningful Use Program is a federal program created and governed by statutes and regulations. Defendants participation in the Meaningful Use Program alone is insufficient to establish they acted under the direction of a federal officer.

2. Basic Government Task

Next, Defendants argue they were acting under the directives of a federal officer because their utilization of EHR assists the government to fulfill a basic governmental task. Specifically, Defendants assert that the federal government would be on its own to create a health technology information infrastructure without private medical providers. The government here has an interest in a patient-accessible health information technology infrastructure, but it is not a common duty or task for the federal government to create, manage, and utilize electronic health records for private medical providers or their patients. *See Buljic,* 22 F.4th at 740 ("[W]hile the government may have an interest in ensuring stable food supply [during a global pandemic], it is not typically the duty or task of the federal government to process meat for commercial consumption.").

Defendants fail to demonstrate that they were assisting the government, as implementing EHR or creating IT infrastructure for the same does not fulfill a basic government function.

The Court thus finds that Defendants fail to satisfy the first element of acting under the direction of a federal officer. Given this conclusion, the Court need not address the remaining disputed elements of causal connection and a colorable federal defense.

## IV. CONCLUSION

As Defendants fail to satisfy at least one necessary element to successfully remove a case under the federal officer removal statute, they have not invoked jurisdiction in federal court. Accordingly, Plaintiff's motion (Doc. 17) is granted, and this matter is remanded back to the Circuit Court of Buchanan County, Missouri.

IT IS SO ORDERED.

/s/ *Jill A. Morris*
JILL A. MORRIS
UNITED STATES MAGISTRATE JUDGE